# EXHIBIT A

## COMMONWEALTH OF MASSACHUSETTS
## SUPERIOR COURT

WORCESTER COUNTY                    CIVIL ACTION NO. 2085CV00409

| | |
|---|---|
| Robert and Margaret Shepardson, et al., | ) |
| | ) |
| v. | ) |
| | ) |
| American Family Life Assurance | ) |
| Company of Columbus; | ) |
| American Family Life Assurance | ) |
| Company of New York; and | ) |
| Aflac Group (collectively "Aflac") | ) |
| | ) |

### FIRST AMENDED COMPLAINT

1.     At all times relevant to the clams herein Plaintiffs Robert and Margaret

Shepardson resided in Athol, Massachusetts, a town located within Worcester County.

Plaintiff Margaret Shepardson is Mr. Shepardson's surviving spouse. She is the sole

beneficiary of his estate and serves in this action as his personal representative (referred

to herein collectively with Mr. Shepardson as "Plaintiffs").

2.     Defendant American Family Life Assurance Company of Columbus is

domiciled in Nebraska with a principal address in Georgia, but is licensed and regularly

does business in the Commonwealth of Massachusetts either directly or through its

affiliates, issuing supplemental insurance contracts to Massachusetts consumers.

3.     Defendant American Family Life Assurance Company of New York is

domiciled in New York with a principal address in New York, but is licensed and

regularly does business in the Commonwealth of Massachusetts either directly or through its affiliates, issuing supplemental insurance contracts to Massachusetts consumers.

4.     Defendant Aflac Group is domiciled in South Carolina with a principal address in Georgia, but is licensed and regularly does business in the Commonwealth of Massachusetts either directly or through its affiliates, issuing supplemental insurance contracts to Massachusetts consumers (all Aflac entities are referred to collectively herein as "Aflac").

### Jurisdiction and Venue

5.     This court has jurisdiction over Aflac to resolve the claims herein pursuant to M.G.L. ch. 223A, § 3(a), as Plaintiffs' claims arose from the transaction of business in the Commonwealth by Aflac and because Aflac's breach of contract directly affects Plaintiffs' contractual and consumer rights afforded by the laws of the Commonwealth. Section 3 (a) of the long-arm statute authorizes personal jurisdiction over any person "arising from the person's ... transacting any business in this commonwealth." M.G.L. ch. 223A, § 3(a). Under section 3(a), "the facts must satisfy two requirements - the defendant must have transacted business in Massachusetts, and the plaintiffs' claim must have arisen from the transaction of business by the defendant." Exxon Mobil Corp. v. Attorney Gen., 479 Mass. 312, 317 (2018) (internal quotation marks omitted). Both requirements are satisfied here.

6.     Venue in Worcester is appropriate pursuant to M.G.L ch. 223, § 8, which authorizes suit "in any county in which the corporation might sue or be sued, or in the county in which the individual lives or has a usual place of business." While either

requirement suffices for purposes of venue, both are satisfied here. At all relevant times hereto, Plaintiffs resided in Worcester County. Aflac issues supplemental insurance contracts to Massachusetts residents including consumers residing in Worcester County, such as Plaintiffs.

Factual Background

7.      Plaintiff Robert Shepardson died on February 28, 2020. Prior to the onset of his illnesses and his resulting death Mr. Shepardson obtained a supplemental insurance policy issued by Aflac ("Cancer Policy"). A true and complete copy of the Cancer Policy is attached hereto as Exhibit A. The Cancer Policy became effective on August 1, 2009. Exhibit A at Policy Schedule (p. 3).

8.      The grant of coverage found in the first clause of Part 6 of the Cancer Policy appears in bold text as presented by Aflac. Specifically, the policy states "**[t]his policy shall provide benefits to any covered person not only for Cancer but for other diseases or conditions caused or aggravated by Cancer or Cancer treatment.**" Exhibit A, Part 6, at p. 9 (emphasis in original).

9.      Mrs. Shepardson is an express, covered beneficiary of the "Two-Parent Family" Cancer Policy. See Exhibit A at Policy Schedule (p. 3), Part 1, Paragraph M3 (p. 5-6), and Part 4, Paragraph J (p. 8). Any accrued but unpaid benefits pursuant to the Cancer Policy are payable to the estate of any covered beneficiary. Exhibit A at Part 4, Paragraph J (p. 8).

10.      Mr. Shepardson was diagnosed with pancreatic cancer in November of 2010. He underwent medically necessary surgery in February of 2011 to remove his

pancreas as part of his treatment for pancreatic cancer. The removal of Mr. Shepardson's pancreas directly caused his secondary illness, diabetes.

11.     Mr. Shepardson's diabetes required treatment including regular administration of insulin and Creon (referred to collectively herein as "Medications"). Absent a functioning pancreas Mr. Shepardson's body was unable to create insulin and Creon, an enzyme necessary for his body to process food. Treatment of Mr. Shepardson's diabetes with insulin and Creon was medically necessary for his survival.

12.     On July 7, 2016, Aflac acknowledged in writing that Mr. Shepardson's diabetes qualified as a covered, secondary illness pursuant to the Cancer Policy. A true and complete copy of Aflac's July 7, 2016 letter is attached hereto as Exhibit C. Aflac thus owed Plaintiffs a mandatory ("shall") contractual obligation to treat secondary non-cancer illnesses diseases or conditions "directly caused or aggravated by Cancer or Cancer treatment." See Exhibit A, at p. 9, and Exhibit C.

13.     Using express, mandatory language, the Cancer Policy states that Aflac "shall" pay "**for treatment of Cancer, including direct extension, metastatic spread, or recurrence, and other diseases or conditions directly caused or aggravated by Cancer or Cancer treatment**." Exhibit A at p. 9 (emphasis in original). Part 5, Paragraph A references the schedule of benefits set forth in Part 6 as pertaining **only** to cancer treatment. See id. at p. 9. The grants of coverage and the oncological benefits sections are separate and distinct provisions appearing at different places in the Cancer Policy. See id. at pp. 6 and 9.

4

14.     When presented with Mr. Shepardson's claim for treatment pursuant to the Cancer Policy, Aflac sought medical records and a statement from Mr. Shepardson's providers to determine (1) whether his pancreatic cancer was a pre-existing condition at the time it issued the Cancer Policy, and (2) whether his diabetes was a secondary condition arising from the treatment of his cancer. At the time it requested medical records and statements, Aflac did not mention any allegation that any "treatment" benefits were limited to oncological courses of treatment. Aflac first raised that defense only after it received the records, when it denied the claims on October 7, 2014.

15.     The records and statements Aflac received from Mr. Shepardson's medical providers confirmed that his diagnoses of cancer and diabetes had not occurred prior to the effective date of the Cancer Policy. The records and statements Aflac received from Mr. Shepardson's medical providers further confirmed that the removal of his pancreas directly caused his secondary condition of diabetes.

16.     After receiving the medical records and statements it requested, Aflac denied any obligation to pay for the Medications necessary to treat Mr. Shepardson's diabetes, on October 7, 2014. Aflac based its denial of coverage of diabetes Medications on its unreasonable interpretation that the Cancer Policy only provided oncological treatment benefits. A true and correct copy of Aflac's October 7, 2014 letter denying benefits is attached hereto as Exhibit B.

17.     The enumerated treatments in Part 6 of Exhibit A (pp. 9-19) pertain only to primary coverage for treatment of cancer. Because the enumerated oncological benefits

pertain only to cancer diagnoses requiring treatments for cancer, it cannot fairly be said that Part 6 limits treatment of any secondary diseases that are **not** cancer.

18.     Mr. Shepardson's diabetes was not cancer, and thus, logically, would not require any of the enumerated oncological treatments set forth in the Cancer Policy. Aflac's restrictive interpretation of the Cancer Policy was unreasonable because it limited treatment of a non-cancer covered secondary diagnosis only to oncological treatment regimens. Aflac's interpretation of the Cancer Policy also was unreasonable because, by limiting "treatment" solely to oncological procedures, it rendered illusory its contractual obligation to provide treatment for any secondary illnesses caused by the treatment of cancer, such as the diabetes that resulted from the removal of Mr. Shepardson's cancerous pancreas. Rather, "treatment" of Mr. Shepardson's diabetes necessarily required insulin and Creon.

19.     Nevertheless, Aflac denied any duty to treat Mr. Shepardson's acknowledged non-cancer, covered, secondary illness by relying unreasonably on the irrelevant oncological benefits listed in Part 6, Section B. The first time it made this argument was in its October 7, 2014 letter, when it denied benefits by falsely claiming that oncological benefits were the **only** "treatment" benefits afforded under the Policy. See Exhibits B and C. Aflac's disclaimer of treatment benefits makes no sense.

20.     Aflac's unreasonable interpretation of the Cancer Policy was motivated by Aflac's desire to avoid paying for insulin, a particularly expensive medication. It is widely known that costs for insulin have increased substantially in the last decade.

Aflac's interpretation of the Cancer Policy was unreasonable, financially motivated, willful, and reached in bad faith.

21.     On December 20, 2019, shortly prior to Mr. Shepardson's death, Plaintiffs, through their attorney, sent Aflac a written demand letter pursuant to M.G.L. ch. 93A, § 9 ("Chapter 93A"). Aflac's January 28, 2020 response to Plaintiffs' Chapter 93A demand letter offered nuisance value for the asserted claims, and, again, unreasonably based its settlement posture on its specious claims that Aflac had no duty to pay for the Medications necessary to treat Mr. Shepardson's diabetes because his Medications were not oncological treatments.

22.     On February 25, 2020 Aflac and Plaintiffs entered into a tolling agreement through their respective legal counsel ("Tolling Agreement") in order to permit settlement discussions to occur in good faith. The Tolling Agreement by its express terms operated to toll all claims and defenses from February 7, 2020 through the termination date of the Tolling Agreement ("Termination Date"). A true and complete copy of the Tolling Agreement is attached hereto as Exhibit D.

23.     By email correspondence sent on March 27, 2020, shortly after Mr. Shepardson's death on February 28, 2020, Aflac's legal counsel declared that the parties had reached an "impasse" and stated that Aflac was therefore providing notice of the Termination Date, which, pursuant to the terms of the Tolling Agreement and as confirmed by Aflac in a follow-up email, would occur on April 10, 2020. Aflac's selection of April 10, 2020 as the Termination Date coincided with the Massachusetts

7

courts' systemic shutdown protocols then in place due to the novel coronavirus/COVID-19.

### Count I: Breach of Contract

24. Plaintiffs hereby incorporate each of the foregoing paragraphs.

25. Aflac owed Plaintiffs a duty to provide treatment of all secondary illnesses caused or aggravated by treatment of cancer.

26. Aflac breached its duty by refusing Plaintiffs the Medications necessary to treat a covered secondary illness.

27. Aflac's breach of its contractual duty to provide treatment pursuant to the Cancer Policy caused Plaintiffs to suffer damages. Damages for breach of contract include unpaid medical costs exceeding $100,000. Additional damages include Plaintiffs' prolonged financial distress from the unreimbursed costs of Mr. Shepardson's diabetes treatment, pain and suffering, loss of his enjoyment of life during Plaintiffs' retirement, and Mrs. Shepardson's loss of consortium.

28. Aflac's breach of contract denied Plaintiffs the Medications Mr. Shepardson needed to survive, damaging Plaintiffs. Aflac's unpaid benefits for treatment of Mr. Shepardson's diabetes caused Plaintiffs to incur out of pocket expenses they should not have been forced to pay, leading directly to Plaintiffs' financial distress and inability to obtain insulin. Mr. Shepardson was forced to ration his insulin supply due to Aflac's breach of its duty to pay for his Medications, thereby diminishing his prospects for health, and damaging Plaintiffs.

29.     Aflac's failure to honor the Cancer Policy shortened Mr. Shepardson's lifespan and greatly diminished his quality of life by denying him reasonable access to Medications that Mr. Shepardson's medical professionals had declared were necessary for the treatment of his diabetes, an illness Aflac had previously acknowledged in writing was a covered, non-cancer, secondary condition resulting from the treatment of his pancreatic cancer. See Exhibit C.

### Count II: Intentional Infliction of Emotional Distress

30.     Plaintiffs hereby incorporate each of the foregoing paragraphs.

31.     Plaintiffs as a married couple enjoyed a close relationship. Pain, suffering, and financial hardship felt by one of them was also felt by the other as a result.

32.     Plaintiffs seek damages for the extreme emotional distress they experienced due to Aflac's breach of its mandatory ("shall") duty to provide Mr. Shepardson's Medications in furtherance of treatment of a covered secondary illness.

33.     Aflac intended to inflict emotional distress or knew, or should have known, that extreme emotional distress was the likely result of its conduct. Its denial of benefits directly jeopardized Mr. Shepardson's health and longevity.

34.     Aflac's conduct was extreme and outrageous, beyond all possible bounds of decency, and was utterly intolerable in a civilized community.

35.     Aflac's actions were the direct cause of the Plaintiffs' distress.

36.     The emotional distress sustained by Plaintiffs was severe, extreme, and of a nature that no reasonable person could be expected to endure it.

37.     Aflac's failure to honor the Cancer Policy was financially motivated and intentional.

38.     Alfac's willful failure to honor the Cancer Policy caused Mr. Shepardson pain, suffering, financial damage, and extreme emotional distress for a prolonged period of time due to his diminished health, life expectancy, vitality, mental condition, physical pain, and related limitations on his life. Alfac's willful failure to honor the Cancer Policy left Plaintiffs in financial distress from struggling to pay for Medicines that Aflac had a duty to provide, thereby damaging them.

39.     Aflac's willful failure to honor the Cancer Policy caused Mrs. Shepardson pain, suffering, financial damage, extreme emotional distress, and loss of consortium by denying her the benefits of Mr. Shepardson comfort and companionship due to his diminished health, life expectancy, vitality, mental condition, physical pain, and other related limitations on his life, thereby damaging her.

### Count III: Violations of Chapter 93A and Chapter 176D

40.     Plaintiffs hereby incorporate each of the foregoing paragraphs.

41.     Aflac misrepresented pertinent facts or insurance policy provisions relating to coverages at issue.

42.     Aflac failed to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

43.     Aflac failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.

44.     Aflac refused to pay claims without conducting a reasonable investigation based upon all available information.

45.     Aflac failed to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed.

46.     Aflac failed to effectuate prompt, fair, and equitable settlements of claims in which liability had become reasonably clear.

47.     Aflac compelled Plaintiffs to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.

48.     Aflac attempted to settle a claim for less than the amount to which a reasonable person would have believed he was entitled by reference to written or printed advertising material accompanying or made part of the Cancer Policy application.

49.     Aflac attempted to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of Plaintiffs.

50.     Aflac issued claims payments to Plaintiffs not accompanied by a statement setting forth the coverage under which payments were being made.

51.     Aflac made known to Plaintiffs its intent to refuse their claims for the purpose of compelling them to accept a settlement or compromise amount less than a reasonable person would have believed he was entitled to receive.

52.     Aflac delayed the investigation or payments of claims by requiring that Plaintiffs, or Plaintiffs' physicians, submit a preliminary claim report and then requiring

the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.

53.     Aflac failed to settle claims promptly where liability had become reasonably clear under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

54.     Aflac failed to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

55.     Aflac reached its unreasonable interpretation of its Cancer Policy willfully, due to its desire to avoid paying for expensive Medications that it knew were required to treat an acknowledged, covered secondary illness. Such denial of benefits pursuant to an insurance contract constitutes an unfair and deceptive practice in violation of Chapter 93A/176D. See Exhibit A at Part 6, p. 9 (granting coverage for "treatment" of diabetes as a qualified secondary disease caused by the treatment of cancer), Exhibit B (denying Mr. Shepardson's claim for benefits under the Cancer Policy), and Exhibit C (acknowledging diabetes as a disease covered by the Cancer Policy).

56.     Aflac's unreasonable and willful failure to honor its mandatory ("shall") obligations under the Cancer Policy caused Plaintiffs pain and suffering by denying them reasonable access to Medications necessary for the treatment of Mr. Shepardson's diabetes.

57.     Aflac's chosen Termination Date for the Tolling Agreement (Exhibit D) coincided with a period of public emergency affecting the normal operations of the courts

in the Commonwealth of Massachusetts. Aflac's intentional decision to terminate the Tolling Agreement at that time constitutes another example of its unfair and deceptive practices in violation of Chapter 93A/176D.

Damages

58.     Plaintiffs hereby incorporate each of the foregoing paragraphs.

59.     Plaintiffs seek damages including interest for all unpaid benefits that Aflac owed a duty to provide pursuant to the Cancer Policy, but which it unreasonably refused to provide to Plaintiffs. Aflac wrongfully (and intentionally) denied paying benefits in an amount that exceeds $100,000, plus accrued interest at the statutory rate.

60.     Plaintiffs seek damages for the physical pain and suffering experienced by Mr. Shepardson due to Aflac's breach of its mandatory ("shall") duty to provide Mr. Shepardson's Medications in furtherance of treatment of a covered secondary illness.

61.     Plaintiffs seek damages for their extreme emotional distress due to Aflac's breach of its duty to provide treatment, including Mr. Shepardson's Medications, of a covered secondary illness, which failure truncated his life expectancy and greatly diminished his ability to care for and comfort her as his spouse.

62.     Mrs. Shepardson seeks damages for her loss of Mr. Shepardson's consortium due to Aflac's breach of its duty to provide treatment, including Mr. Shepardson's Medications, of a covered secondary illness, which failure truncated his life expectancy and greatly diminished his ability to care for and comfort her as his spouse.

63.     Plaintiffs seek damages in an amount to be determined at trial under Chapter 93A/176D for Aflac's unreasonable and willful refusal to acknowledge its

mandatory ("shall") duty under the Cancer Policy to provide treatment including Medications for a covered secondary illness.

64.     Plaintiffs seek damages in an amount to be determined at trial under Chapter 93A/176D for Aflac's unfair or deceptive claims handling and bad-faith refusal to acknowledge its mandatory ("shall") duty under the Cancer Policy to provide treatment including Medications for a covered secondary illness. See Exhibit A, Part 6, at p. 9; see also Exhibits B and C.

65.     Plaintiffs seek damages in an amount to be determined at trial for Aflac's unfair or deceptive settlement practices pursuant to Chapter 93A/176D when liability due to its breach of duty under the Cancer Policy was reasonably clear.

66.     Plaintiffs seek double or treble damages and attorney's fees in an amount to be determined at trial for Aflac's unfair or deceptive settlement practices in violation of Chapter 93A/176D.


<u>Request for Trial by Jury</u>

Plaintiffs request trial by jury.


WHEREFORE, Plaintiff(s) respectfully seek trial by jury for damages on their claims of breach of contract and unfair or deceptive claims handling practices in violation of Massachusetts laws set forth in Chapter 93A/176D including, without limitation, for monetary damages, pain and suffering, extreme emotional distress, loss of enjoyment, and loss of consortium.

Respectfully Submitted on June 23, 2020 on behalf
of Plaintiffs, by and through their counsel,

/s/ Lee M. Holland, Esq.
BBO# 650617

d/b/a The Investment Advocates
300 Baker Avenue, Suite 300
Concord, Massachusetts 01742
holland@theinvestmentadvocates.com
Tel: (978) 270-9311
Fax: (978) 776-2311

# Exhibit A

Robert A Shepardson
Cancer Policy

# Here are your insurance documents.

## Keep them in a safe place.

American Family Life Assurance Company of Columbus (Aflac)
Worldwide Headquarters • Columbus, Georgia 31999



# Aflac®

Thank you for choosing Aflac.

1.800.99.AFLAC (1.800.992.3522)
aflac.com

DUPLICATE

Your Policy Number is: PU094026
Product: Cancer Policy
Your Type of Coverage: Two-Parent Family
Your Policy is Effective : 08/01/09
Your Premium is: $65.40
Your Premiums are due: Monthly
Your State of Issue is: Massachusetts

REL          N

N          REL

INMAIL

# Aflac.

**INDIVIDUAL SPECIFIED DISEASE INSURANCE**

The Named Insured as shown in the Policy Schedule will be referred to as "you," "your," or "yours." **American Family Life Assurance Company of Columbus (Aflac)**, a stock company, will be referred to as "we," "our," "us," or "Aflac."

**Notice to buyer: This insurance provides a limited benefit in the event you are diagnosed with Cancer. This policy is a supplement and not a substitute for a health benefit plan. You must have a health benefit plan in order to purchase this insurance.**

 This plan, alone, does not meet Minimum Creditable Coverage standards and **will not satisfy** the individual mandate that you have health insurance.

As of January 1, 2009, the Massachusetts Health Care Reform Law requires that Massachusetts residents, eighteen (18) years of age and older, must have health coverage that meets the Minimum Creditable Coverage standards set by the Commonwealth Health Insurance Connector, unless waived from the health insurance requirement based on affordability or individual hardship. For more information call the Connector at 1-877-MA-ENROLL or visit the Connector website (http://www.mahealthconnector.org/).

This plan is not intended to provide comprehensive health care coverage and **does not meet Minimum Creditable Coverage standards**, even if it does include services that are not available in the insured's other health plans.

**If you have questions about this notice, you may contact the Division of Insurance by calling (617) 521-7794 or visiting its website at www.mass.gov/doi.**

Form A91333      (Effective February 1, 2008 or Policy Effective Date, whichever is later.)

## THE FIRST-OCCURRENCE BENEFIT IS NOT PAYABLE FOR THE DIAGNOSIS OF SKIN CANCER OR MELANOMAS CLASSIFIED AS CLARK'S LEVEL I OR II, OR A BRESLOW LEVEL LESS THAN OR EQUAL TO 1.5 MM.

### CONSIDERATION

This policy is issued in consideration of statements made in your application and the payment of the premium shown in the Policy Schedule. A copy of your application is attached and is a part of this policy. We agree to indemnify covered persons for the treatment of Cancer. The following paragraphs set forth: the insurance benefits, limitations and exclusions, definitions of terms, and other provisions.

### YOUR RIGHT TO EXAMINE THIS POLICY

It is important to us that you are satisfied with this policy and that it meets your insurance needs. If you are not satisfied, you may return it within 30 days after you receive it. Send it to our associate (duly licensed agent) or to Aflac Worldwide Headquarters, 1932 Wynnton Road, Columbus, Georgia 31999. You will receive a full refund of all premiums paid, and your policy will be void from its Effective Date. If you return the policy, please note in writing: "This policy is returned for cancellation and refund of premium."

## IMPORTANT NOTICE

Caution: The issuance of this specified disease insurance policy is based upon your responses to the questions on your application. A copy of your application is enclosed. If your answers are incorrect or untrue as of the date you signed the applications, Aflac has the right to deny benefits or rescind your policy subject to the Time Limit on Certain Defenses provision of your policy. The best time to clear up any questions is now, before a claim arises! If, for any reason, any of your answers are incorrect, contact Aflac Worldwide Headquarters within 30 days of the date you receive the policy at 1932 Wynnton Road, Columbus, Georgia 31999.

## THIS POLICY IS GUARANTEED-RENEWABLE FOR YOUR LIFETIME, SUBJECT TO OUR RIGHT TO CHANGE PREMIUMS BY CLASS UPON ANY RENEWAL DATE SUBJECT TO THE APPROVAL OF THE COMMISSIONER OF INSURANCE.

We agree that this policy will never be restricted by the addition of any rider without your consent, nor will renewal be refused because of any change in any covered person's health or physical condition. You are guaranteed the right to renew this policy for your lifetime by the timely payment of premiums at the rate in effect at the beginning of each term.

We may change the established premium rate, but only if the rate is changed for all policies of this class. While this policy is in force, no change will be made in your class because of the age, sex, or physical condition of any covered person. "Class" means all policies of this form number and premium classification in your state that are then in force. If the established premium rate changes, we will notify you in writing at your last known address at least 31 days before the change becomes effective.

## THIS POLICY DOES NOT CONTAIN A PRE-EXISTING CONDITION OR LIMITATION.

American Family Life Assurance Company of Columbus (Aflac)
Worldwide Headquarters • 1932 Wynnton Road • Columbus, Georgia 31999
For assistance or information about this policy, call 1.800.99.AFLAC (1.800.992.3522)

## INDEX

Named Insured ............................................................................................................Policy Schedule

Definitions ..............................................................................................................................Part 1

Limitations and Exclusions ....................................................................................................Part 2

Right of Conversion ...............................................................................................................Part 3

Uniform Provisions ................................................................................................................Part 4

Eligibility for Benefits ............................................................................................................Part 5

Benefits ..................................................................................................................................Part 6

### Policy Schedule

| INSURED: Robert A Shepardson | |
|---|---|
| TYPE OF COVERAGE: Two-Parent Family | POLICY NUMBER: PU094026 |
| MODE OF PAYMENT: Monthly | PREMIUM:    $65.40 |

| COVERAGE: | CCAIPC | EFFECTIVE DATE: | 08/01/09 | $56.90 |
|---|---|---|---|---|
| | CCAIPJ | | 08/01/09 | $2.00 |
| | CCAIPG | | 08/01/09 | $6.50 |

MESSAGES:
```
CCAIPC   INDIVIDUAL SPECIFIED DISEASE POLICY (LEVEL THREE)
CCAIPJ   SPECIFIED DISEASE BENEFIT RIDER
CCAIPG   FIRST OCCURRENCE BUILDING BENEFIT RIDER: 5 UNITS =  $500.00
```

In witness whereof, Aflac's president and secretary signed this policy in Columbus, Georgia, as of the policy Effective Date shown in the Policy Schedule.

Paul S. Amos II, President

J. Matthew Loudermilk, Secretary

PU094026

00000

2300DG1

003816

This is a legal contract between you and Aflac.
**READ YOUR POLICY CAREFULLY.**

**Part 1**
**DEFINITIONS**

A. **ACTIVITIES OF DAILY LIVING (ADLs):** activities used in measuring your levels of personal functioning capacity. Normally, these activities are performed without assistance, allowing you personal independence in everyday living.

The ADLs are:

1. Maintaining continence: controlling urination and bowel movements, including your ability to use ostomy supplies or other devices such as catheters;

2. Transferring: moving between a bed and a chair, or a bed and a wheelchair;

3. Dressing: putting on and taking off all necessary items of clothing;

4. Toileting: getting to and from a toilet, getting on and off a toilet, and performing associated personal hygiene; and

5. Eating: performing all major tasks of getting food into your body.

B. **AMBULATORY SURGICAL CENTER:** a facility, licensed as such, that provides outpatient surgical services. It does not include a Physician's or dentist's office, a clinic, or any other such location.

C. **BONE MARROW TRANSPLANTATION:** the harvesting, storage, and subsequent reinfusion of bone marrow from the recipient or a matched donor in which chemotherapy and/or total body radiotherapy to destroy the patient's residual bone marrow is administered. **It does not include the harvesting of peripheral blood cells or stem cells and subsequent reinfusion.**

D. **CANCER:** a disease manifested by the presence of a malignant tumor characterized by the uncontrolled growth and spread of malignant cells and the invasion of tissue. "Cancer" also includes leukemia and Hodgkin's disease.

Benefits are payable for carcinomas in situ (in the natural or normal place, confined to the site of origin without having invaded neighboring tissue). Benefits are not payable for such conditions diagnosed prior to the Effective Date of this policy. **Premalignant conditions or conditions with malignant potential, including myelodysplastic and myeloproliferative disorders, will not be considered Cancer.**

Such Cancer must be positively diagnosed by a Physician who is certified by the American Board of Pathology to practice pathologic anatomy or by a certified osteopathic pathologist. Pathologic interpretation of the histology of skin lesions will be accepted from dermatologists certified by the American Board of Dermatopathology. The diagnosis must be based on a microscopic examination of fixed tissue or preparations from the hemic system (either during life or postmortem). The pathologist making the diagnosis will base judgment solely on the criteria of "malignancy" as accepted by the American Board of Pathology or the Osteopathic Board of Pathology after a study of the histocytologic architecture or pattern of the suspect tumor, tissue, or specimen.

A clinical diagnosis of Cancer will be accepted as evidence that Cancer exists when a pathological diagnosis cannot be made, provided medical evidence substantially documents the diagnosis of Cancer and the covered person receives treatment for Cancer. Such pathological report or, if applicable, clinical diagnosis must be submitted to Aflac for benefits to be payable.

E. **EFFECTIVE DATE:** the date(s) shown in the Policy Schedule. The Effective Date of the policy **is not** the date you signed the application for coverage, but the date recorded by Aflac in the Policy Schedule.

F. **HOSPICE:** a licensed agency, organization, or unit, that provides a centrally administered and autonomous continuum of palliative and supportive care to terminally ill persons and their families. The care must be directed and coordinated by the Hospice organization and received primarily in the patient's home, or on an outpatient or short-term inpatient basis in a Hospice unit.

G. **HOSPITAL:** an institution legally licensed as such that maintains and uses on its premises or in facilities available to it on a prearranged, written, contractual basis: a laboratory, X-ray equipment and an operating room. The institution must also have permanent and full-time facilities for the care of overnight resident bed patients under the supervision of one or more licensed Physicians, provide 24-hour-a-day nursing service by or under the supervision of a registered nurse, and maintain the patients' written histories and medical records on the premises. "Hospital" also includes Ambulatory Surgical Centers. "Hospital" does not include any institution, or part thereof, used as: a Hospice unit, including any bed designated as a Hospice bed; a swing bed; a convalescent home; a rest or nursing facility; a psychiatric unit; a rehabilitation unit or facility; an extended-care facility; a skilled nursing facility; or a facility primarily affording custodial or educational care, care or treatment for persons suffering from mental diseases or disorders, care for the aged, or care for persons addicted to drugs or alcohol.

H. **IMMEDIATE FAMILY:** anyone related to you in the following manner: spouse; brother or sister (includes stepbrother and stepsister); children (includes stepchildren); parent(s) (includes stepparents); grandchildren; father- or mother-in-law; and spouses, as applicable, of any of these.

I. **IMMUNOTHERAPY:** immunoglobulins or colony-stimulating factors given as a part of a treatment regimen for internal Cancer to stimulate or restore the ability of the immune system to fight infection and disease.

J. **NCI-DESIGNATED CANCER CENTER:** a Cancer treatment or research facility that currently holds a National Cancer Institute (NCI) designation.

K. **PHYSICIAN:** a legally qualified person, other than a member of your Immediate Family, who is licensed as a Physician by the state to treat the type of condition for which a claim is made.

L. **STEM CELL TRANSPLANTATION:** the harvesting, storage, and subsequent reinfusion of peripheral blood cells or stem cells from the recipient or from a matched donor in which chemotherapy and/or total body radiotherapy to destroy the patient's residual bone marrow is administered. **It does not include the harvesting, storage, and subsequent reinfusion of bone marrow from the recipient or a matched donor under general anesthesia.**

M. **TYPE OF COVERAGE:** see your Policy Schedule to determine the Type of Coverage issued: Individual, One-Parent Family, or Two-Parent Family.

1. **Individual:** coverage for only you (the Named Insured listed in the Policy Schedule).

2. **One-Parent Family:** coverage for you (the Named Insured) and all of your dependent children. "Dependent children" are your natural children, stepchildren, or legally adopted children who are unmarried and under 25 years of age, and who qualify as legal dependents for tax exemption purposes under the United States Internal Revenue Service Tax Code.

3. **Two-Parent Family:** coverage for you (the Named Insured), your spouse, and all of your dependent children (or those of your spouse). "Dependent children" are your natural children, stepchildren or legally adopted children who are unmarried and under 25 years

PU094026

00000

23000G1

003818

of age, and who qualify as legal dependents for tax exemption purposes under the United States Internal Revenue Service Tax Code.

Persons covered under Individual, One-Parent Family, or Two-Parent Family are referred to as "covered persons." Any One-Parent Family or Two-Parent Family member specifically excluded by name from coverage is not included in the One-Parent Family or Two-Parent Family definition. Any person who becomes a family member after the Effective Date of this policy, except a newborn, who is automatically covered from the moment of birth, or an adopted child, who is covered from the date the petition is filed, must be added by endorsement. Persons added as family members by endorsement will be covered for only that Cancer diagnosed on or after the 30th day following the Effective Date of their endorsement. If this is an Individual policy, newborn children are automatically covered from the moment of birth, and adopted children are covered from the date the petition is filed; however, if you desire uninterrupted coverage, you must notify Aflac in writing within 31 days of the birth of your child or the date the petition is filed for an adopted child.  Upon notification, Aflac will convert this policy to One-Parent Family or Two-Parent Family coverage and advise you of the additional premium due. If this is a One-Parent Family or a Two-Parent Family policy, it is not necessary to notify Aflac of the birth or adoption of a child, and no additional premium will be required for coverage of newborns or adopted children. If you wish any other person to be covered after the Effective Date of the policy, you must apply for such coverage, and that person must be added by endorsement.  If Two-Parent Family coverage is already in force, an additional premium will not be required. Insurance for persons added by endorsement becomes effective on the date specified on the endorsement.

The insurance on any dependent child will terminate on the anniversary date of this policy following the child's 25th birthday, on the date the child marries, or at the time the child no longer qualifies as a legal dependent for tax exemption purposes under the United States Internal Revenue Service Tax Code, whichever occurs first (for continuation of coverage, see Part 3, Right of Conversion). Termination will be without prejudice to any claim originating prior to the date of termination.  Our acceptance of premium after such date will be considered as premium for only the remaining persons who qualify as covered persons under this policy. You must notify Aflac, in writing, of any changes that will affect the Type of Coverage. After such notice, Aflac will arrange for the payment of the appropriate premium due, including returning any unearned premium.  Coverage provided under any One-Parent Family or Two-Parent Family policy will continue to include any other unmarried dependent child, regardless of age, who is incapable of self-sustaining employment by reason of mental retardation or physical handicap and who became so incapacitated while he/she was covered and before he/she reached age 25. You must furnish proof of such incapacity and dependency to Aflac within 31 days of the child's 25th birthday.  Proof of continued incapacity and dependency must be furnished at Aflac's request, but not more often than annually, after the two-year period following the child's 25th birthday.

### Part 2
### LIMITATIONS AND EXCLUSIONS

A. We pay only for treatment of Cancer, including direct extension, metastatic spread, or recurrence, and other diseases or conditions directly caused or aggravated by Cancer or Cancer treatment.  Benefits are not provided for premalignant conditions; conditions with malignant potential; or any other disease, sickness, or incapacity.

B. This policy contains a 30-day waiting period. If a covered person has Cancer diagnosed before coverage has been in force 30 days from the Effective Date of coverage shown in the Policy Schedule, benefits for treatment of that Cancer will apply only to treatment occurring after six months from the Effective Date of the policy or, at your option, you may elect to void the policy from its beginning and receive a full refund of premium.

C. The First-Occurrence Benefit is not payable for: (1) any internal Cancer diagnosed or treated before the Effective Date of this policy and the subsequent recurrence, extension, or metastatic spread of such internal Cancer that is diagnosed prior to the Effective Date of this

policy; (2) Cancer diagnosed during this policy's 30-day waiting period; (3) the diagnosis of skin Cancer or melanomas classified as Clark's Levels I and II, or a Breslow level less than or equal to 1.5 mm. **Any covered person who has had a previous diagnosis of Cancer will NOT be eligible for a First-Occurrence Benefit under this policy for a recurrence, extension, or metastatic spread of that same Cancer.**

### Part 3
### RIGHT OF CONVERSION

A. **DISSOLUTION OF MARRIAGE:** If you and your spouse dissolve your marriage by a valid decree of dissolution of marriage and your spouse was covered under a Two-Parent Family policy, the ex-spouse's coverage will terminate. Your ex-spouse may then apply for and receive, without evidence of insurability, a policy providing coverage not greater than the terminated coverage. To obtain the policy, your ex-spouse must make application to Aflac within 60 days following the entry of the decree of dissolution of marriage and pay the appropriate premium for the policy. No waiting period is required except to the extent that such period has not been met under this policy. If such dissolution of marriage occurs, the Named Insured under this policy at the time of the dissolution will retain that status. Any covered dependents may be covered under either policy, but not both. **Any spouse applying for another Cancer policy who has had internal Cancer diagnosed under this policy will not be eligible for the First-Occurrence Benefit in the new policy.**

B. **DEATH:** In the event of your death, your spouse, if alive and covered hereunder, will become the Named Insured. All benefits accrued prior to your death will be paid to your estate. No waiting period is required except to the extent that such period has not been satisfied by that person under this policy. **Please note: Any covered person who has had internal Cancer diagnosed under this policy will not be eligible for the First-Occurrence Benefit in the new policy.**

C. **TERMINATION OF DEPENDENCY:** A covered person whose dependency has terminated and who desires to continue coverage as a Named Insured under a separate policy may do so by notifying Aflac of the request in writing. The dependent will have the right to apply for a Cancer policy without evidence of insurability and without interruption in coverage, provided Aflac receives written notification of the request prior to 31 days after the anniversary date of this policy following the date he or she is no longer considered a dependent. **Any dependent applying for another Cancer policy who has had internal Cancer diagnosed under this policy will not be eligible for the First-Occurrence Benefit in the new policy.**

### Part 4
### UNIFORM PROVISIONS

A. **ENTIRE CONTRACT; CHANGES:** This policy, together with the application, endorsements, benefit agreements, riders, and attached papers, if any, constitutes the entire contract of insurance. No change in this policy is valid until approved in writing by the secretary and president of Aflac at our worldwide headquarters. Any such change must be noted on or attached hereto. No associate (duly licensed agent) has the authority to change this policy or to waive any of its provisions.

B. **TIME LIMIT ON CERTAIN DEFENSES:** (1) After two years from the Effective Date of this policy, any misstatements, except fraudulent misstatements, made by you in the application shall not be used to void the policy or to deny a claim for care commencing after the expiration of such two-year period. (2) No claim for loss commencing after two years from the Effective Date of this policy will be reduced or denied on the grounds that a disease or physical condition, not excluded from coverage by name or specific description, had existed prior to such Effective Date.

C. **TERM:** The term of this policy begins at midnight, standard time, at the place where you reside on the Effective Date shown in the Policy Schedule. It ends at midnight, at the same standard time, on the first renewal date. Each renewal term ends at midnight, at the same

PUO94026

00000

23000G1

003820

standard time, on the next following renewal date. Renewal dates are determined by the mode of payment. The mode of payment for the original term of this policy is shown in the Policy Schedule. An annual premium will maintain this policy in force for 12 months, semiannual for six months, quarterly for three months, and monthly for one month. Premium for a term is due on the first day of that term. If you fail to pay your premium by the end of the grace period, coverage under this policy will terminate.

**D. GRACE PERIOD:** A grace period of 31 days will be granted for the payment of each premium falling due after the first premium. During the grace period, this policy shall continue in force.

**E. REINSTATEMENT:** You may request reinstatement of your policy from our associate (duly licensed agent) or from Aflac. If your policy has lapsed for nonpayment of premium and we accept a later payment without requiring an application, your policy shall be reinstated. If we require a written application and provide you with a conditional receipt, your policy will be reinstated upon our approval of the application. If we do not notify you of our disapproval in writing within 45 days of the date of your application, your policy shall be deemed reinstated. The reinstated policy will cover loss resulting only from hospitalization for and/or treatment of Cancer that is diagnosed more than ten days after the date of reinstatement. In all other respects, you and Aflac will have the same rights as provided under the policy immediately before the due date of the defaulted premium, subject to any provisions added in connection with the reinstatement. Any premium accepted in connection with a reinstatement will be applied to a period for which premium has not been previously paid, but not to any period prior to the date of reinstatement.

**F. NOTICE OF CLAIM:** Written notice of claim must be given within 60 days after a covered loss starts or as soon as reasonably possible. The notice can be given to Aflac at our worldwide headquarters or to our associate (duly licensed agent). Notice of claim should include the name of the covered person and the policy number.

**G. CLAIM FORMS:** When we receive a notice of claim, we will send you forms for filing proof of loss. If the forms are not given to you within 15 working days, you will meet the proof-of-loss requirements by giving us a written statement of the nature and extent of the loss within the time limit stated in the Proof of Loss provision.

**H. PROOF OF LOSS:** Written proof of loss must be furnished to Aflac at our worldwide headquarters within 90 days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate or reduce any claim if it was not reasonably possible to give proof within such time. However, such proof must be furnished as soon as reasonably possible and in no event (except in the absence of legal capacity) later than 15 months from the time proof is otherwise required.

**I. TIME OF PAYMENT OF CLAIMS:** All benefits payable under this policy will be paid immediately upon receipt of due written proof of loss.

**J. PAYMENT OF CLAIMS:** All benefits will be payable to you unless assigned by you or by operation of law. Any accrued benefits unpaid at your death will be paid to your estate.

**K. LEGAL ACTIONS:** No legal action may be brought to recover on this policy within 60 days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action may be brought after three years from the time written proof of loss is required to be furnished.

**L. CONFORMITY WITH STATE STATUTES:** Any provision of this policy that, on its Effective Date, is in conflict with the statutes of the state in which it was issued is hereby amended to conform to the minimum requirements of such statutes.

**M. OTHER INSURANCE WITH AFLAC:** If a person is covered under more than one Specified Disease policy or rider, only one Aflac policy chosen by you, your beneficiary, or your estate, as the case may be, will be effective. We will pay benefits under the policies for claims that

may have been incurred since their respective Effective Dates. We will also return all premiums paid for the canceled policies from the date of duplication, less any benefits paid under these policies from such date. This policy will pay regardless of any other coverage you may have.

N. **PHYSICAL EXAMINATIONS:** At our expense, we shall have the right and opportunity to have a covered person examined by a Physician or other appropriate duly licensed medical professional of our choice as often as it may be reasonably required during the pendency of a claim.

O. **CHANGE OF BENEFICIARY:** Unless you made the beneficiary designation in the attached application irrevocable, you have the right to make a change. The consent of the beneficiary is not required to surrender the policy, assign benefits or make any other changes to this policy.

### Part 5
### ELIGIBILITY FOR BENEFITS

A. If you or any covered family member is diagnosed as having Cancer while this policy is in force, we will pay for the diagnosis and treatment of Cancer occurring while this policy remains in force, according to the Benefits section, Part 6, subject to all other limitations and exclusions, conditions, and provisions of this policy, and:

1. If Cancer is diagnosed after the 30-day waiting period (see Part 2B, Limitations and Exclusions), the "diagnosis date" is the day the tissue specimen, culture, and/or titer is taken upon which the diagnosis of Cancer is based. It is not the date the diagnosis was communicated to the covered person.

2. If a covered person has Cancer diagnosed before coverage has been in force 30 days from the Effective Date of coverage shown in the Policy Schedule, benefits for treatment of that Cancer will apply only to treatment occurring after six months from the Effective Date of the policy or, at your option, you may elect to void the policy from its beginning and receive a full refund of premium.

3. The First-Occurrence Benefit is not payable for any Cancer diagnosed before coverage has been in force 30 days or for any recurrence, extension, or metastatic spread of a Cancer diagnosed prior to the Effective Date of coverage.

B. Outpatient and hospitalization benefits for the treatment of Cancer will accrue as follows:

If Cancer is diagnosed while a covered person is hospitalized or receiving outpatient treatment, benefits will accrue from the first day of admission to the Hospital. EXCEPTION: If skin Cancer is diagnosed during hospitalization, benefits will be limited to the day(s) the covered person actually received treatment for skin Cancer [such as a malignant tumor, ulcer, pimple, or mole that may arise on the surface of the body (skin) including melanomas classified as Clark's Levels I and II, or a Breslow level less than or equal to 1.5 mm]. No benefits will be payable for expenses incurred prior to the 30th day after the Effective Date shown in the Policy Schedule.

### Part 6
### BENEFITS

This policy shall provide benefits to any covered person not only for Cancer but for other diseases or conditions directly caused or aggravated by Cancer or Cancer treatment.

Benefit A is a preventive benefit; diagnosis of Cancer is not required for this benefit to be payable.

A. **CANCER SCREENING WELLNESS BENEFIT:** Aflac will pay $75 (seventy-five dollars) per calendar year when a charge is incurred for one of the following: mammogram, breast

PU094026

00000

23000G1

003822

ultrasound, Pap smear, ThinPrep, biopsy, flexible sigmoidoscopy, hemocult stool specimen, chest X-ray, CEA (blood test for colon Cancer), CA 125 (blood test for ovarian Cancer), PSA (blood test for prostate Cancer), thermography, colonoscopy or virtual colonoscopy. These tests must be performed to determine whether Cancer exists in a covered person. This benefit is limited to one payment per calendar year, per covered person.   No lifetime maximum.

While this policy is in force, the following benefits will be paid, subject to Part 2, Limitations and Exclusions, and all other policy provisions, if a covered person is diagnosed and treated as having Cancer and is hospitalized for the treatment of Cancer, or receives specified outpatient Cancer treatment.

**B. FIRST-OCCURRENCE BENEFIT:** Aflac will pay a First-Occurrence Benefit for each covered person under this policy when he or she is diagnosed as having internal Cancer, subject to Part 2, Limitations and Exclusions, Section C. "Internal Cancer" includes melanomas classified as Clark's Level III and higher or a Breslow level greater than 1.5 mm.

| **Insured** | **Spouse** | **Child** |
|---|---|---|
| $5,000 | $5,000 | $7,500 |

This benefit is payable under this policy only once for each covered person and will be paid in addition to any other benefit in this policy.   In addition to the pathological or clinical diagnosis required by the definition of Cancer in Part 1D, we may require additional information from the attending Physician and Hospital.

**C. HOSPITAL CONFINEMENT BENEFITS (includes confinement in a U.S. government Hospital):**

   **1. HOSPITALIZATION FOR 30 DAYS OR LESS:**  When a covered person is confined to a Hospital for treatment of Cancer for 30 days or less, Aflac will pay $300 (three hundred dollars) per day for each day a covered person is charged for a room as an inpatient.

   **2. HOSPITALIZATION FOR 31 DAYS OR MORE:** During any continuous period of Hospital confinement of a covered person for treatment of Cancer for 31 days or more, Aflac will pay benefits as described in Section C1 above for the first 30 days.  Beginning with the 31st day of such continuous Hospital confinement, Aflac will pay $600 (six hundred dollars) per day for each day you are charged for a room as an inpatient.

   No lifetime maximum.

   **EXCEPTION:  a person confined to a U.S. government Hospital does not need to be charged for the Hospital Confinement Benefit to be payable.**

   **When Cancer treatment is received in a U.S. government Hospital, the following benefits are not payable unless the covered person is actually charged and is legally required to pay for such services.**

**D. MEDICAL IMAGING BENEFIT:**  Aflac will pay $200 (two hundred dollars) per calendar year when a charge is incurred for each covered person who receives an initial diagnosis or follow-up evaluation of internal Cancer using one of the following medical imaging exams: CT scans, MRI's, bone scans, Multiple Gated Acquisition (MUGA) scans, Positron Emission Tomography (PET) scans or transrectal ultrasounds.   These exams must be performed in a Hospital, to include an Ambulatory Surgical Center, or a Physician's office. This benefit is limited to one payment per calendar year, per covered person. No lifetime maximum.

**E. RADIATION AND CHEMOTHERAPY BENEFIT:** Aflac will pay $300 (three hundred dollars) per day as follows when a charge is incurred for a covered person who receives one or more of the following Cancer treatments for the purpose of modification or destruction of abnormal tissue:

1. Cytotoxic chemical substances and their administration in the treatment of Cancer:
   a. Injection by medical personnel in a Physician's office, clinic, or Hospital.
   b. Self-injected medications will be limited to $300 (three hundred dollars) per daily treatment, subject to a monthly maximum of $2,400 (two thousand four hundred dollars) for all medications.
   c. Medications dispensed by a pump or implant will be limited to $300 (three hundred dollars) for the initial prescription and $300 (three hundred dollars) for each pump refill, subject to a monthly maximum of $1,200 (one thousand two hundred dollars) for all medications. The Surgical/Anesthesia Benefit provides additional amounts payable for insertion and removal.
   d. Oral chemotherapy, regardless of where administered, will be limited to $300 (three hundred dollars) per prescription, subject to a monthly maximum of $1,200 (one thousand two hundred dollars) for all prescriptions.

2. Radiation therapy or

3. The insertion of interstitial or intracavitary application of radium or radioisotopes. The Surgical/Anesthesia Benefit provides additional amounts payable for insertion and removal.

If delivery of radiation or chemotherapy is other than the ones listed above, benefits will be subject to a monthly maximum of $1,200 (one thousand two hundred dollars).

Treatments must be FDA or NCI approved for the treatment of Cancer. This benefit does not pay for laboratory tests, diagnostic X-rays, immunoglobulins, immunotherapy, colony-stimulating factors, therapeutic devices, simulation, dosimetry, treatment planning or other procedures related to these therapy treatments. Benefits will not be paid for each day the radium or radioisotope remains in the body or for each day of continuous infusion of medications dispensed by a pump or implant. No lifetime maximum.

**This benefit is not payable on the same day that the Experimental Treatment Benefit is paid.**

F. **EXPERIMENTAL TREATMENT BENEFIT:** Aflac will pay $300 (three hundred dollars) per day as follows when a charge is incurred for a covered person who receives one or more of the following experimental Cancer treatments, prescribed by a Physician, for the purpose of modification or destruction of abnormal tissue:

1. Treatment administered by medical personnel in a Physician's office, clinic or Hospital.
2. Self-injected medications will be limited to $300 (three hundred dollars) per daily treatment, subject to a monthly maximum of $2,400 (two thousand four hundred dollars).
3. Medications dispensed by a pump will be limited to $300 (three hundred dollars) for the initial prescription and $300 (three hundred dollars) for each refill, subject to a monthly maximum of $1,200 (one thousand two hundred dollars). The Surgical/Anesthesia Benefit provides additional amounts payable for insertion and removal.
4. Oral medications, regardless of where administered, will be limited to $300 (three hundred dollars) per prescription, subject to a monthly maximum of $1,200 (one thousand two hundred dollars) for all prescriptions.

Treatments must be approved by the NCI as viable experimental treatment for Cancer. This benefit does not pay for laboratory tests, diagnostic X-rays, immunoglobulins, immunotherapy, colony-stimulating factors, and therapeutic devices or other procedures related to these therapy treatments. Benefits will not be paid for each day of continuous infusion of medications dispensed by a pump or implant. No lifetime maximum.

**This benefit is not payable on the same day that the Radiation and Chemotherapy Benefit is paid.**

G. **IMMUNOTHERAPY BENEFIT:** Aflac will pay $500 (five hundred dollars) per calendar month during which a charge is incurred for a covered person who receives immunoglobulins or colony-stimulating factors as prescribed by his/her Physician as part of a treatment regimen

PU094026   00000   2300001   003824

for internal Cancer. Lifetime maximum of $2,500 (two thousand five hundred dollars) per covered person.

**Any medications paid under the Radiation and Chemotherapy Benefit or the Experimental Treatment Benefit will not be paid under the Immunotherapy Benefit.**

H. **ANTI-NAUSEA BENEFIT:** Aflac will pay $150 (one hundred fifty dollars) per calendar month during which a charge is incurred for a covered person who receives anti-nausea drugs that are prescribed while receiving radiation or chemotherapy treatments. No lifetime maximum.

I. **NURSING SERVICES BENEFIT:** While confined in a Hospital, if a covered person requires private nurses and their services other than those regularly furnished by the Hospital, Aflac will pay $150 (one hundred fifty dollars) per 24-hour day for full-time private care and attendance provided by such nurses (registered graduate nurses, licensed practical nurses, or licensed vocational nurses) when a charge is incurred. These services must be required and authorized by the attending Physician. This benefit is not payable for private nurses who are members of your Immediate Family. This benefit is payable for only the number of days the Hospital Confinement Benefit is payable. No lifetime maximum.

J. **SURGICAL/ANESTHESIA BENEFIT:**

1. When a surgical operation is performed on a covered person for a diagnosed internal Cancer, Aflac will pay the indemnity listed in the following Schedule of Operations for the specific procedure when a charge is incurred. If any operation for the treatment of Cancer is performed other than those listed, Aflac will pay an amount comparable to the amount shown in the Schedule of Operations for the operation most nearly similar in severity and gravity. **EXCEPTIONS: Surgery for skin Cancer will be payable under Benefit L. Reconstructive surgery will be payable under Benefit N.** Two or more surgical procedures performed through the same incision will be considered one operation, and benefits will be paid based upon the highest eligible benefit.

2. Aflac will pay an indemnity benefit equal to 25% of the amount shown in the Schedule of Operations for the administration of anesthesia during a covered surgical operation.

The combined benefits payable in the Surgical/Anesthesia Benefit for any one operation will not exceed $6,250 (six thousand two hundred fifty dollars). No lifetime maximum on number of operations.

### SCHEDULE OF OPERATIONS

**ABDOMEN**

| | |
|---|---|
| Paracentesis | $ 100 |
| Exploratory laparotomy | 525 |
| Cholecystectomy | 700 |

**BLADDER**

| | |
|---|---|
| Cystoscopy | 140 |
| TUR bladder tumors | 525 |
| Cystectomy | |
| (partial) | 900 |
| (complete) | 1,800 |
| (with ureteroileal conduit) | 3,600 |

**BRAIN**

| | |
|---|---|
| Burr holes not followed by surgery | 700 |
| Ventriculoperitoneal shunt | 700 |
| Exploratory craniotomy | 1,500 |
| Excision brain tumor | 3,500 |
| Hemispherectomy | 5,000 |

**BREAST**

| | |
|---|---|
| Needle biopsy | 140 |
| Cutting operation biopsy | 280 |
| Lumpectomy | 350 |
| Mastectomy | |
| (partial) | 525 |
| (simple) | 700 |
| (radical) | 1,050 |

**CERVIX**

| | |
|---|---|
| D & C | 175 |
| Colposcopy | 175 |
| Vaginal hysterectomy/ uterus only | 525 |
| Oophorectomy | 525 |
| Abdominal hysterectomy/ uterus only | 900 |
| Uterus, tubes & ovaries | 1,750 |
| with exenteration | 5,000 |

## CHEST

Thoracentesis ....................................... 140
Bronchoscopy .........................................300
Mediastinoscopy .....................................300
Thoracostomy .........................................300
Thoracotomy ...........................................700
Wedge resection ...................................1,200
Lobectomy ...........................................1,500
Pneumonectomy ...................................2,100

## ESOPHAGUS

Esophagoscopy ......................................280
Esophagogastrectomy .........................1,500
Resection of esophagus ....................2,000

## EYE

P32 uptake ..................................................
250Enucleation ......................................500

## INTESTINES

Sigmoidoscopy........................................140
Proctosigmoidoscopy .............................140
Colonoscopy  (does not include virtual) .280
Cutting operation on rectum
   for biopsy .........................................280
Colostomy/or revision of.........................350
ERCP......................................................350
Ileostomy................................................350
Colectomy ..............................................900
Resection of small intestine ................2,100
Abdominal-perineal approach
   for removal of Cancer of
     sigmoid colon or rectum ................2,500

## KIDNEY

Nephrectomy
(simple)  ..............................................2,100
(radical .................................................3,600

## LIVER

Needle biopsy .........................................140
Wedge biopsy .........................................350
Resection of liver .................................1,000

## LYMPHATIC

Excision of lymph nodes ....................$ 175
Splenectomy ...........................................700
Axillary node dissection ..........................700
Lymphadenectomy
   (unilateral)..........................................700
   (bilateral).............................................900

## MANDIBLE

Mandibulectomy ...................................1,400

## MISCELLANEOUS

Bone marrow biopsy
   or aspiration .......................................140
Venous-catheters/venous port
   for chemotherapy ...............................280

Pathological hip fracture ........................875

## MOUTH

Hemiglossectomy....................................350
Tonsil/mucous membrane .......................525
Glossectomy ...........................................700
Resection of palate .................................700

## PANCREAS

Jejunostomy............................................900
Pancreatectomy ...................................2,100
Whipple procedure ..............................3,600

## PENIS

Amputation
   (partial)................................................350
   (complete) ...........................................700
   (radical) ...............................................900

## PROSTATE

Needle biopsy .........................................140
Cystoscopy .............................................140
TUR prostate...........................................525
Radical prostatectomy..........................1,400

## RADIUM IMPLANTS

Insertion ...............................................1,000
Removal..................................................500

## SALIVARY GLANDS

Biopsy .................................................. 350
Parotidectomy .........................................700
Radical neck dissection ........................1,800

## SPINE

Cordotomy ..............................................525
Laminectomy...........................................900

## STOMACH

Gastroscopy............................................300
Gastrojejunostomy ..................................900
Gastrectomy
   (partial)................................................900
   (complete) .........................................1,400

## TESTIS

Orchiectomy
   (unilateral)  ........................................350
   (bilateral).............................................490

## THROAT

Laryngoscopy..........................................300
Tracheostomy .........................................300
Laryngectomy
   (without neck dissection) ...................900
   (with neck dissection) .....................1,800

## THYROID

Thyroidectomy
   (partial: one lobe) ..............................525

PU094026

00000

23000G1

003826

(total: both lobes) ...............................700

**VULVA**

Vulvectomy
 (partial)..............................................525
 (radical) .........................................1,050

**K. OUTPATIENT HOSPITAL SURGICAL BENEFIT:**  When a surgical operation is performed on a covered person for a diagnosed internal Cancer and an operating room charge is incurred, Aflac will pay $300 (three hundred dollars).  For this benefit to be paid surgeries must be performed on an outpatient basis in a Hospital, to include an Ambulatory Surgical Center. This benefit is payable once per day and is not payable on the same day as the Hospital Confinement Benefit.  This benefit is payable in addition to the Surgical/Anesthesia Benefit.  No lifetime maximum on number of operations.

**This benefit is not payable for surgery performed in a Physician's office or for skin Cancer surgery.**

**L. SKIN CANCER SURGERY BENEFIT:**  When a surgical operation is performed on a covered person for a diagnosed skin Cancer, Aflac will pay the indemnity listed below when a charge is incurred for the specific procedure. The indemnity amount listed below includes anesthesia services.  No lifetime maximum on number of operations.

| | |
|---|---|
| Biopsy | $100 |
| Excision of lesion of skin without flap or graft | 250 |
| Flap or graft without excision | 375 |
| Excision of lesion of skin with flap or graft | 600 |

**M. PROSTHESIS BENEFIT:** (1) Aflac will pay $3,000 (three thousand dollars) when a charge is incurred for surgically implanted prosthetic devices that are prescribed as a direct result of surgery for Cancer treatment.   Lifetime maximum of $6,000 (six thousand dollars) per covered person.  (2)  Aflac will pay $250(two hundred fifty dollars) per occurrence, per person for nonsurgically implanted prosthetic devices that are prescribed as a direct result of Cancer treatment when a charge is incurred.  Examples of nonsurgically implanted prosthetic devices include voice boxes, hair pieces and removable breast prosthesis.   Lifetime maximum of $500 (five hundred dollars) per covered person.
**The Prosthesis Benefit does not include coverage for a Breast Transverse Rectus Abdominis Myocutaneous (TRAM) Flap procedure listed under the Reconstructive Surgery Benefit in Part 6, N.**

**N. RECONSTRUCTIVE SURGERY BENEFIT:**  When a surgical operation is performed on a covered person for reconstructive surgery for the treatment of Cancer, Aflac will pay the indemnity listed below when a charge is incurred for the specific procedure.  No lifetime maximum on number of operations.

| | |
|---|---|
| Breast Transverse Rectus Abdominis Myocutaneous (TRAM) Flap | $3,000 |
| Breast Reconstruction | 700 |
| Breast Symmetry (on the nondiseased breast | 350 |
| occurring within five years of breast reconstruction) | |
| Facial Reconstruction | 700 |

Aflac will pay an indemnity benefit equal to 25% of the amount shown above for the administration of anesthesia during a covered reconstructive surgical operation.

If any reconstructive surgery is performed other than those listed, Aflac will pay an amount comparable to the amount shown above for the operation most nearly similar in severity and gravity.

**O. IN-HOSPITAL BLOOD AND PLASMA BENEFIT:**  If a covered person receives blood and/or plasma during a covered Hospital confinement, Aflac will pay $150 (one hundred fifty dollars) times the number of days of covered Hospital confinement paid under C above when a

charge is incurred. This benefit does not pay for immunoglobulins, immunotherapy, or colony-stimulating factors. No lifetime maximum.

**P. OUTPATIENT BLOOD AND PLASMA BENEFIT:** Aflac will pay $250 (two hundred fifty dollars) for each day a covered person receives blood and/or plasma transfusions for the treatment of Cancer as an outpatient in a Physician's office, clinic, Hospital, or Ambulatory Surgical Center when a charge is incurred. This benefit does not pay for immunoglobulins, immunotherapy, or colony-stimulating factors. No lifetime maximum.

**Q. SECOND SURGICAL OPINION BENEFIT:** Aflac will pay $300 (three hundred dollars) when a charge is incurred for a second surgical opinion concerning Cancer surgery for a diagnosed Cancer by a licensed Physician. This benefit is not payable the same day the NCI Evaluation/Consultation Benefit is payable. No lifetime maximum.

**R. NATIONAL CANCER INSTITUTE EVALUATION/CONSULTATION BENEFIT:** Aflac will pay $500 (five hundred dollars) when a covered person seeks evaluation or consultation at an NCI-Designated Cancer Center as a result of receiving a prior diagnosis of internal Cancer. The purpose of the evaluation/consultation must be to determine the appropriate course of Cancer treatment. Aflac will pay $250 (two hundred fifty dollars) for the transportation and lodging of the covered person receiving the evaluation/consultation.

The NCI-Designated Cancer Center must be more than 50 miles from the covered person's residence for the transportation and lodging portion of this benefit to be payable. This benefit is not payable the same day the Second Surgical Opinion Benefit is payable. (This benefit is also payable at the Aflac Cancer Center & Blood Disorders Service of Children's Healthcare of Atlanta). This benefit is payable only once under this policy per covered person.

**S. AMBULANCE BENEFIT:** Aflac will pay $200 (two hundred dollars) when a charge is incurred for ambulance transportation of a covered person to or from a Hospital where the covered person is confined overnight for Cancer treatment. Aflac will pay $1,000 (one thousand dollars) when a charge is incurred for air ambulance transportation of a covered person to or from a Hospital where the covered person is confined overnight for Cancer treatment. This benefit is limited to two trips per confinement. The ambulance service must be performed by a licensed professional ambulance company. No lifetime maximum.

**T. TRANSPORTATION BENEFIT:** If a covered person requires Cancer treatment that has been prescribed by the local attending Physician, Aflac will pay $.50 (fifty cents) per mile for transportation of a covered person for the round-trip distance between the Hospital or medical facility and the residence of the covered person. Benefit amounts payable are limited to $1,500 (one thousand five hundred dollars) per round trip. This benefit will be paid only for the covered person for whom the treatment is prescribed.

If the treatment is for a dependent child and commercial travel (coach-class plane, train, or bus fare) is necessary, we will pay this benefit for up to two adults to accompany the dependent child. **THIS BENEFIT IS NOT PAYABLE FOR TRANSPORTATION TO ANY HOSPITAL/FACILITY LOCATED WITHIN A 50-MILE RADIUS OF THE RESIDENCE OF THE COVERED PERSON OR FOR TRANSPORTATION BY AMBULANCE TO OR FROM ANY HOSPITAL.**

**U. LODGING BENEFIT:** Aflac will pay $60 (sixty dollars) per day when a charge is incurred for lodging for you or one adult family member when a covered person receives Cancer treatment at a Hospital or medical facility more than 50 miles from the covered person's residence. This benefit is not payable for lodging occurring more than 24 hours prior to treatment or for lodging occurring more than 24 hours following treatment. This benefit is limited to 90 days per calendar year.

**V. BONE MARROW TRANSPLANTATION BENEFIT:** (1) Aflac will pay $10,000 (ten thousand dollars) when a covered person receives a Bone Marrow Transplantation (see Part 1C) for which a charge is incurred for the treatment of Cancer. (2) Aflac will pay the covered person's bone marrow donor an indemnity of $1,000 (one thousand dollars) for his or her

expenses incurred as a result of the transplantation procedure. Lifetime maximum of $10,000 (ten thousand dollars) per covered person.

**W. STEM CELL TRANSPLANTATION BENEFIT:** Aflac will pay $5,000 (five thousand dollars) when a charge is incurred if a covered person receives a peripheral Stem Cell Transplantation (see Part 1L) for the treatment of Cancer. This benefit is payable once per covered person. Lifetime maximum of $5,000 (five thousand dollars) per covered person.

**X. EXTENDED-CARE FACILITY BENEFIT:** If a covered person is hospitalized and receives benefits under Part 6C and is later confined, within 30 days of hospital confinement, to an extended-care facility, a rehabilitation unit or facility, a transitional care unit or any bed designated as a swing bed, or to a section of the Hospital used as such, Aflac will pay $100 (one hundred dollars) per day when a charge is incurred for such continued confinement, limited to the same number of days that the covered person receives benefits under Part 6C. For each day this benefit is payable, benefits under Part 6C, Hospital Confinement Benefits, are NOT payable. Lifetime maximum of 365 days per covered person.

If more than 30 days separates a stay in an extended-care facility, benefits are not payable for the second confinement unless the covered person was again confined to a Hospital prior to the second such confinement.

**Y. HOSPICE BENEFIT:** When a covered person is diagnosed with Cancer and therapeutic intervention directed toward the cure of the disease is medically determined to be no longer appropriate, and if the covered person's medical prognosis is one in which there is a life expectancy of six months or less as the direct result of Cancer, Aflac will pay a one-time benefit of $1,000 (one thousand dollars) for the first day the covered person receives Hospice care and $50 (fifty dollars) per day thereafter for Hospice care. For this benefit to be payable, Aflac must be furnished: (1) a written statement from the attending Physician that the covered person is terminally ill within the terms of this paragraph, and (2) a written statement from the Hospice certifying the days services were provided. This benefit is not payable the same day the Home Health Care Benefit is payable. Lifetime maximum for each covered person is $12,000 (twelve thousand dollars).

**Z. HOME HEALTH CARE BENEFIT:** If a covered person is hospitalized and receives benefits under Part 6C and later requires home health care within 30 days of hospital confinement, we will pay $150 (one hundred fifty dollars) per day when a charge is incurred for the first 30 days a covered person receives home health care as the direct result of Cancer, and beginning with the 31st day of such care, we will pay $300 (three hundred dollars) per day when a charge is incurred for home health care. **Lifetime maximum of 100 days per covered person.**

This benefit is not payable the same day the Hospice Benefit is payable.

**AA.NURSING HOME BENEFIT:** If a covered person is hospitalized and receives benefits under Part 6C and is later confined within 30 days of hospital confinement, we will pay $150 (one hundred fifty dollars) per day when a charge is incurred for the first 30 days a covered person is confined in a nursing home as the direct result of Cancer, and beginning with the 31st day of such care, we will pay $300 (three hundred dollars) per day when a charge is incurred for confinement in a nursing home. **Lifetime maximum of 100 days per covered person.**

This benefit is not payable the same day the Hospital Confinement Benefit is payable.

**BB. WAIVER OF PREMIUM BENEFIT:** If you, due to having internal Cancer (as defined in Part 1, Definitions, Section D), are completely unable to do all of the usual and customary duties of your occupation [if you are not employed: are completely unable to perform two or more of the Activities of Daily Living (ADLs) without the assistance of another person] for a period of 90 continuous days, Aflac will waive, from month to month, any premiums falling due during your continued inability. For premiums to be waived, Aflac will require an employer's statement (if applicable) and a Physician's statement of your inability to perform

said duties or activities, and may each month thereafter require a Physician's statement that total inability continues.

If you die and your spouse becomes the new Named Insured, premiums will start again and be due on the first premium due date after the change. The new Named Insured will then be eligible for this benefit if the need arises.

Aflac may ask for and use an independent consultant to determine whether you can perform an ADL when this benefit is in force.

Aflac will also waive, from month to month, any premiums falling due while you are receiving Hospice Benefits under Item Y above (the Hospice Benefit).

CC. **CONTINUATION OF COVERAGE BENEFIT:** Aflac will waive all monthly premiums due for the policy and riders for two months if you meet all of the following conditions:

1. Your policy has been in force for at least six months;
2. We have received premiums for at least six consecutive months;
3. Your premiums have been paid through payroll deduction;
4. You or your employer has notified us in writing within 30 days of the date your premium payments ceased due to your leaving employment; and
5. You re-establish premium payments through:
   (a) your new employer's payroll deduction process, or
   (b) direct payment to Aflac.

You will again become eligible to receive this benefit after:

1. You re-establish your premium payments through payroll deduction for a period of at least six months, and
2. We receive premiums for at least six consecutive months.

**"Payroll deduction" means your premium is remitted to Aflac for you by your employer through a payroll deduction process.**

PU094-026

00000

2300061

003830

**Additional Benefits**
For the purpose of these Benefits and the payment hereunder, all policy and Benefit provisions will be deemed to begin on the Effective Date of these Benefits.

CCAIPG

This **FIRST-OCCURRENCE BUILDING BENEFIT RIDER** is a part of the policy and is subject to all policy provisions unless modified herein.

**EFFECTIVE DATE**
The Effective Date of this rider is the Effective Date of the policy or the Effective Date of this rider, as stated on the Policy Schedule, if later.

**BENEFITS**
**FIRST-OCCURRENCE BUILDING BENEFIT:** This benefit can be purchased in units of $100 (one hundred dollars) each, up to a maximum of five units or $500 (five hundred dollars). **All amounts cited in this rider are for one unit of coverage. If more than one unit has been purchased, then the amounts listed must be multiplied by the number of units in force.** The number of units you purchased is shown on both the Policy Schedule and the attached application.

The **FIRST-OCCURRENCE BENEFIT**, as defined in Part 6B of the policy, will be increased by $100 (one hundred dollars) for each unit purchased on each rider anniversary date while this rider remains in force. (The amount of the monthly increase will be determined on a pro rata basis.) This benefit will be paid under the same terms as the First-Occurrence Benefit. This benefit will cease to build for each covered person on the anniversary date of this rider following the covered person's 65th birthday or at the time internal Cancer, subject to Part 2C of the policy, is diagnosed for that covered person, whichever occurs first. However, regardless of the age of the covered person on the Effective Date of this rider, this benefit will accrue for a period of at least five years unless internal Cancer is diagnosed prior to the fifth year of coverage. (If this is Individual coverage, no further premium will be billed for this rider after the payment of benefits.)

**TERMINATION**
This rider will terminate if the policy to which it is attached terminates, when the benefit has been paid to all covered persons as described in Part 6B of the policy, or if the premium for this rider is not paid.

Form A-75050

A75050.2

CCAIPJ

This **SPECIFIED-DISEASE BENEFIT RIDER** is a part of the policy and is subject to all policy provisions unless modified herein. Where applicable, "specified disease" may be substituted for "Cancer" in the policy.

**BENEFITS**
**SPECIFIED-DISEASE BENEFITS:** While coverage is in force, if an insured is first diagnosed with one or more of the covered specified diseases and is hospitalized for the definitive treatment of any of the covered specified diseases, and other diseases or conditions directly caused or aggravated by the specified disease or specified disease treatment, AFLAC will pay indemnities at the rates designated below.

A. **INITIAL HOSPITALIZATION BENEFIT:** When a covered person is confined to a Hospital for 12 or more hours as a result of receiving treatment for a specified disease, we will pay an Initial Hospitalization Benefit of $1,000 (one thousand dollars). This benefit is payable only once per Period of Confinement and once per calendar year for each covered person.

## B. HOSPITAL CONFINEMENT BENEFITS:

1. HOSPITALIZATION FOR 30 DAYS OR LESS:  During any continuous period of Hospital confinement of 30 days or less, for a covered specified disease, AFLAC will pay an indemnity of $200 (two hundred dollars) per day.

2. HOSPITALIZATION FOR 31 DAYS OR MORE:  During any continuous period of Hospital confinement of 31 days or more for a covered specified disease, AFLAC will pay benefits as described in Section B1 above for the first 30 days, and beginning with the 31st day of such continuous Hospital confinement, AFLAC will pay an indemnity of $500 (five hundred dollars) per day.

## DEFINITION OF COVERED DISEASES

"Specified disease" as used under this benefit means one or more of the diseases listed below. These diseases must be first diagnosed by a Physician 30 days following the Effective Date of the rider for benefits to be paid.  The diagnosis must be made by and upon a tissue specimen, culture(s) and/or titer(s).  If any of these diseases is diagnosed prior to the rider being in effect for 30 days, benefits for that disease(s) will be paid only for loss incurred after the rider has been in force two years.

1. Adrenal hypofunction (Addison's disease)
2. Amyotrophic lateral sclerosis (ALS or Lou Gehrig's disease)
3. Botulism
4. Bubonic plague
5. Cerebral palsy
6. Cholera
7. Cystic fibrosis
8. Diphtheria
9. Encephalitis (including Encephalitis contracted from West Nile virus)
10. Huntington's chorea
11. Legionnaires' disease
12. Malaria
13. Meningitis (bacterial)
14. Multiple sclerosis
15. Muscular dystrophy
16. Myasthenia gravis
17. Necrotizing fasciitis
18. Osteomyelitis
19. Polio
20. Rabies
21. Reye's syndrome
22. Scarlet fever
23. Scleroderma
24. Sickle cell anemia
25. Systemic lupus
26. Tetanus
27. Toxic shock syndrome
28. Tuberculosis
29. Tularemia
30. Typhoid fever
31. Variant Creutzfeldt-Jakob disease (mad cow disease)
32. Yellow fever

Form A-75052-MA

A75052MA.1

# ENDORSEMENT

### AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS (AFLAC)
### WORLDWIDE HEADQUARTERS • 1932 WYNNTON ROAD
### COLUMBUS, GEORGIA 31999

CERTIFICATE OR
POLICY NUMBER: See Policy Schedule        DATE OF ISSUE:        See Policy Schedule

INSURED:        See Policy Schedule        ENDORSEMENT DATE: 10/01/2010 or the Policy
                                           Effective Date, whichever
                                           is later.

Additions or changes have been made to the above policy as of the Endorsement Date and indicated as follows:

The following is only applicable to losses occurring on or after the Endorsement Date:

Coverage for dependent children will continue until the anniversary date of the policy following the dependent child's 26th birthday. Aflac is waiving any other age, education, marriage, or Internal Revenue Service requirements for dependent children that may be contained in your policy. Any child who was not covered or was specifically excluded from coverage by the terms of your policy prior to the Endorsement Date will not automatically be covered. If you desire to cover a dependent child who has never been covered under your policy, you must apply for such coverage, that dependent child must pass underwriting, and then the child will be added by endorsement.

This Endorsement does not waive any other policy provision not discussed herein. Benefits are subject to all limitations and exclusions, conditions, and provisions of the policy unless modified herein.

This endorsement has been executed at Aflac's Worldwide Headquarters in Columbus, Georgia, on the above-stated endorsement date.


Paul S. Amos II, President                         J. Matthew Loudermilk, Secretary


Form A-5436a26ad                                                     A5436a26ad.1

# Exhibit B

October 7, 2014

ıllılılıllılılıllllırllılılılılılıllllıllıllılılı

Robert A. Shepardson
2154 Main St
Athol MA  01331-3501



RE:       Policy No.:              PU094026
          Patient:                 Robert Shepardson
          Provider:                Various
          Treatment Date(s):       02/27/12

Dear Mr. Shepardson:

Thank you for allowing Aflac to be part of managing your insurance needs.  We appreciate
your business.

We received a claim with the information referenced above.

After carefully reviewing the claim, we have determined that benefits are not payable for the
following reason(s):

Only those benefits specifically listed in the policy are covered.  Please refer to the Benefits
section of the policy for further information.

If you disagree with the company's decision, you have the right to appeal, in writing, to the
Commonwealth of Massachusetts Division of Insurance, 1000 Washington St, Ste. 810,
Boston, MA 02118-6200.

If you need our help or if you have any questions, please visit aflac.com or call us toll-free at
1-800-99-AFLAC (1-800-992-3522).  Our customer service representatives are here to assist
you Monday through Friday from 8 a.m. to 8 p.m. Eastern time.

Sincerely,

Aflac Claims Department

E09421

# Exhibit C



July 7, 2016

Robert A Shepardson
2154 Main St
Athol MA 01331-3501

RE:    Policy No.:    PU094026 – Cancer Indemnity Insurance

Dear Mr. Shepardson:

We received a request to again review your claims for your insulin and Creon prescriptions that
were prescribed for secondary diabetes due to the removal of your pancreas for cancer. Thank
you for bringing your concerns to our attention and for the opportunity to further clarify the benefits
of your policy.

Part 5A of your policy, **ELIGIBILITY FOR BENEFITS**, states in part, "If you or any covered family
member is diagnosed as having Cancer while this policy is in force, we will pay for the diagnosis
and treatment of Cancer occurring while this policy remains in force, according to the Benefits
section, Part 6, subject to all other limitations and exclusions, conditions, and provisions of this
policy,"

Part 6 of the policy, **BENEFITS**, states in part, "**This policy shall provide benefits to any
covered person not only for Cancer but for other diseases or conditions directly caused
by or aggravated by Cancer or Cancer treatment.**"

According to these provisions, your policy will pay for the diagnosis and treatment of Cancer
and other diseases or conditions directly caused by or aggravated by Cancer or Cancer
treatment according to the Benefits section, Part 6. Therefore, the treatment of Cancer or other
diseases or conditions directly caused by or aggravated by Cancer or Cancer treatment must
be one of the specific treatments listed in the Benefits section of the policy.

While we do acknowledge that secondary diabetes due to removal of the pancreas for cancer is
a covered condition under your policy, unfortunately the specific treatments (insulin and Creon)
are not treatments that are covered by the benefits of your policy. Other treatments such as
Hospital confinement or surgery for your secondary diabetes would be covered since those are
specific treatments listed within the policy. Therefore, we find that no benefits are payable for
your insulin and Creon prescriptions and we must uphold our previous denial.

American Family Life Assurance Company of Columbus (Aflac)
Worldwide Headquarters • 1932 Wynnton Road • Columbus, Georgia 31999-0001
1-800-99-AFLAC (1-800-992-3522) Payroll Accounts/Policyholders/Claimants
1-800-462-3522 Associates/Agents • 1-800-742-3522 en español
aflac.com

Robert A Shepardson
July 7, 2016
Page 2

Mr. Shepardson, we understand your frustrations; however, we must adhere to the provisions stated within the policy and can only provide benefits for the specific treatments listed. If you need our help or if you have any questions, please visit aflac.com or call us toll-free at 1-800-99-AFLAC (1-800-992-3522). Our customer service representatives are here to assist you Monday through Friday from 8 a.m. to 8 p.m. Eastern time.

Sincerely,

*Fred Jarrett*

Fred Jarrett
Aflac Claims Department

If you disagree with the company's decision, you have the right to appeal, in writing, to the Commonwealth of Massachusetts Division of Insurance, 1000 Washington St, Ste. 810, Boston, MA 02118-6200.

# Exhibit D

**TOLLING AGREEMENT**

This Tolling Agreement ("Agreement") is made and entered into as of the day set forth below ("Effective Date") by and between Robert and Margaret Shepardson ("Shepardsons") and American Family Life Assurance Co. of Columbus ("Aflac") (collectively referred to as the "Parties").

WHEREAS, the Shepardsons tendered a demand letter (the "Demand") on December 20, 2019, pursuant to the Massachusetts Consumer Protection Act, M.G.L. c. 93A.

WHEREAS, Aflac timely responded to the Demand by letter dated January 28, 2020.

WHEREAS, the Parties are engaged in settlement negotiations in an attempt to amicably resolve the matters set forth in the Demand.

NOW, THEREFORE, for and in consideration of the Parties' agreement to continue to engage in settlement negotiations, it is agreed that:

1.      The period between February 7, 2020 and the Termination Date, set forth below, shall not be included in determining the applicability of any statute of limitations, laches, or contractual limitations on any claims that may be alleged in any subsequent lawsuit by the Shepardsons against Aflac, in connection with or related to the matters set forth in the Demand, or any defenses thereto.

2.      The Termination Date shall be set on the date on which the Parties' good faith negotiations have reached an impasse and ultimately become unproductive. Either Party may trigger the Termination Date, by first delivering ten business days' written notice to the other Party ("Notice"). The Notice must clearly set forth the Termination Date.

3.      Between the Effective Date and the Termination Date, the Parties agree not to initiate any litigation or legal proceeding against the other Party with regard to the claims related to the matters set forth in the Demand.

1

4.      Nothing in this Agreement shall affect any liability or defense otherwise available to the Parties as of the Effective Date.

5.      Nothing in this Agreement operates to revive any claims time-barred, as of February 7, 2020.

6.      This Agreement shall not operate or be construed as an admission of liability by either party.  Neither this Agreement nor any action hereunder shall be offered or received in evidence in any proceeding as an admission of liability or wrongdoing of any nature on the part of any party.

7.      This Agreement constitutes the entire agreement among the Parties pertaining to the subject matter herein and supersedes all prior agreements and understandings of the Parties in connection therewith, whether formal or informal, written or oral.

8.      This Agreement may not be modified except in writing signed by the Parties or their authorized agents or counsel.

2

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the date
and year first written below.

DATED this 25ᵗʰ day of February, 2020.

**Robert and Margaret Shepardson**

By: _____

Lee M. Holland
Attorney for Robert and Margaret Shepardson

DATED this 28ᵗʰ day of February, 2020.

**American Family Life Assurance Co. of Columbus**

By: _____

Byrne Decker
Kristina N. Holmstrom
Attorney for American Family Life Assurance Co. of
Columbus

41776557.1

3

| **Summons** | CIVIL DOCKET NO. **2085CV00409** | **Trial Court of Massachusetts** **The Superior Court** |
|---|---|---|

| CASE NAME: | | Dennis P. McManus    Clerk of Courts |
|---|---|---|

CASE NAME:

Robert and Margaret Shepardson, et al.,

Plaintiff(s)

vs.

**American Family Life Assurance Company of Columbus;**
**American Family Life Assurance Company of New York; and**
**Aflac Group (collectively "Aflac")**

Defendant(s)

Dennis P. McManus    Clerk of Courts
Worcester                      County

COURT NAME & ADDRESS:
Worcester Superior Court
225 Main Street
Worcester, Massachusetts 01608

THIS SUMMONS IS DIRECTED TO American Family Life Assurance (Defendant's name)
Company of New York

You are being sued. The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the _____ Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

    a) Filing your **signed original** response with the Clerk's Office for Civil Business, Superior       Court

    225 Main Street, Worcester, MA 01608 (address), by mail or in person **AND**

    b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:
    **Lee M. Holland, Esq., 3 Apple Ridge, Unit 1, Maynard, MA 01754**

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

<u>www.mass.gov/courts/case-legal-res/rules_of_court</u>

### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at <u>www.mass.gov/courts/selfhelp</u>.

### 5. Required Information on All Filings:

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness HonJUDITH FABRICANT               , Chief Justice on _____ , 20____ . (Seal)

Clerk-Magistrate _____

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

PROOF OF SERVICE OF PROCESS

---

I hereby certify that on _____ . I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated: _____               Signature: _____

**N.B.   TO PROCESS SERVER:**

   **PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

Date:

| **CIVIL TRACKING ORDER**<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br><br>2085CV00409 | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|
| CASE NAME:<br>Shepardson, Robert et al vs. American Family Life Assurance Company of<br>Columbus et al | | Dennis P. McManus, Clerk of Courts |
| TO: Lee McHarg Holland, Esq.<br>The Investment Advocates<br>300 Baker Ave<br>Suite 300<br>Concord, MA 01742 | | COURT NAME & ADDRESS<br>Worcester County Superior Court<br>225 Main Street<br>Worcester, MA 01608 |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| **STAGES OF LITIGATION** | **DEADLINE** | | |
|---|---|---|---|
| | SERVED BY | FILED BY | HEARD BY |
| Service of process made and return filed with the Court | | 07/13/2020 | |
| Response to the complaint filed (also see MRCP 12) | | 08/11/2020 | |
| All motions under MRCP 12, 19, and 20 | 08/11/2020 | 09/10/2020 | 10/13/2020 |
| All motions under MRCP 15 | 08/11/2020 | 09/10/2020 | 10/13/2020 |
| All discovery requests **and depositions** served and non-expert depositions completed | 02/08/2021 | | |
| All motions under MRCP 56 | 03/09/2021 | 04/08/2021 | |
| Final pre-trial conference held and/or firm trial date set | | | 08/06/2021 |
| Case shall be resolved and judgment shall issue by | | | 04/13/2022 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**
This case is assigned to

| DATE ISSUED | ASSISTANT CLERK | PHONE |
|---|---|---|
| **04/15/2020** | **Cheryl Riddle** | **(508)831-2358** |