UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT AND MARGARET SHEPARDSON,<br>    Plaintiffs,<br><br>    v.<br><br>AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS; AMERICAN FAMILY LIFE ASSURANCE COMPANY OF NEW YORK; AND AFLAC GROUP (COLLECTIVELY, "AFLAC"),<br>    Defendants. | CIVIL ACTION<br>NO. 4:20-40098-TSH |

**ORDER AND MEMORANDUM ON DEFENDANTS' MOTION TO DISMISS (Docket No. 4)**

**March 10, 2021**

**HILLMAN, D.J.**

  Margaret Shepardson ("Plaintiff") filed this action for breach of contract (Count I), intentional infliction of emotional distress ("IIED") (Count II), and unfair insurance claim settlement practices, in violation of M.G.L. c. 93A and 176D (Count III), against American Family Life Assurance Company of Columbus, American Family Life Assurance Company of New York, and Aflac Group (collectively "Aflac") for denying coverage of Robert Shepardson's diabetes medications under the Shepardson's supplemental cancer health insurance policy and subsequent bad acts. Plaintiff brings this action on behalf of her deceased husband, Robert Shepardson, as his personal representative and a policy beneficiary. Aflac moves to dismiss all claims. (Docket No. 4).

1

After hearing and for the following reasons, Aflac's Motion to Dismiss the First Amended Complaint ("FAC") (Docket No. 4) is **_granted_**.

**Background**[1]

*The Cancer Policy*

In 2009, Robert Shepardson[2] purchased a Two-Parent Individual Specified Disease Insurance Policy from American Life Assurance Company of Columbus ("the Cancer Policy" or "Policy") that covered himself and his wife, Margaret, and any dependent children. (Part 1.1.M.2. Type of Coverage, Docket No. 1-1 at 24). In exchange for a monthly premium, Aflac[3] agreed that "if [Shepardson] or any covered family member is diagnosed as having Cancer while this policy is in force, <u>we will pay for the diagnosis and treatment of Cancer occurring while this policy remains in force, according to the Benefits section, Part 6</u>, subject to all other limitations and exclusions, conditions, and provisions of this policy . . ." (Pt. 5.A. Eligibility for Benefits, Docket No. 1-1 at 28) (emphasis added).

Part 6, "Benefits," provided in a heading in bold type that "[t]his policy shall provide benefits to any covered person not only for Cancer but for other diseases or conditions directly caused or aggravated by Cancer or Cancer treatment." (*Id*.). It then listed more than 30 benefits

---

[1] The following facts are taken from the FAC (Ex. A, Docket No. 1-1) and are assumed true for the purposes of this motion.
[2] Mr. Shepardson, one of the covered persons under the disputed insurance policy, sent Defendants a 93A Demand Letter and participated in settlement discussions but passed away before the initiation of this lawsuit, which was filed by his widow, Margaret, as his personal representative and a covered person under the policy. Aflac disputes Margaret Shepardson's standing in this case.
[3] As Defendants noted, neither Aflac Group nor American Family Life Assurance of New York are proper defendants in this case, as the Cancer Policy binds only the American Family Life Assurance Company of Columbus. (*See* Ex. A, Docket No. 1-1 at 20).

covered by the Cancer Policy, including a First Occurrence of Cancer Benefit, Hospital Confinement Benefit, Medical Imaging Benefit, Radiation and Chemotherapy Benefit, Experimental Treatment Benefit, Immunotherapy Benefit, Anti-Nausea Benefit, Surgical/Anesthesia Benefit, Outpatient Hospital Surgical Benefit, Prosthesis Benefit, Reconstructive Surgery Benefit, In-Hospital Blood and Plasma Benefit, National Cancer Institute Evaluation/Consultation Benefit, Bone Marrow Transportation Benefit, and Hospice Benefit. (*Id*. at 28-35). The Cancer Policy took effect on August 1, 2009. (*Id*. at 22).

In November 2010, Robert Shepardson was diagnosed with pancreatic cancer. (FAC ¶ 10, Docket No. 1-1 at 4-5). His pancreas was removed in February 2011 as part of his cancer treatment. (*Id*.). The pancreatomy caused Mr. Shepardson to develop diabetes because his body could no longer produce insulin and Creon, a digestive enzyme. (¶ 11). To survive, he had to regularly take artificial insulin and Creon medications. (*Id*.). (Id. at ¶ 10-11).

Shepardson submitted a claim for benefits for coverage of his insulin and Creon medications, but Aflac denied the claim on October 7, 2014 because "[o]nly those benefits listed in the policy are covered. Please refer to the Benefits section of the policy for further information." (Ex. B, Docket No. 1-1 at 41). The letter informed Shepardson he could appeal to the Commonwealth of Massachusetts Division of Insurance if he disagreed with Aflac's decision. (*Id*.). Shepardson subsequently appealed—the FAC does not specify whether he appealed to the Division of Insurance or Aflac, or both— and Aflac affirmed its denial of coverage on July 7, 2016 in a more detailed letter which acknowledged that Shepardson's diabetes was a covered condition, but that insulin and Creon were not treatments covered by the Benefits listed in Part 6 of the Cancer Policy. (Ex. C, Docket No. 1-1 at 43-4).

On December 20, 2019, Robert and Margaret Shepardson sent Aflac a 93A demand letter; Aflac responded on January 28, 2020. (FAC ¶ 21, Docket No. 1-1). The parties engaged in settlement discussions and entered into a tolling agreement as of February 7, 2020. (FAC ¶ 22). Following Mr. Shepardson's death on February 28, 2020, settlement negotiations stalled, and Aflac terminated the Tolling Agreement on April 10, 2020. (*Id.*).

Margaret Shepardson filed suit on April 13, 2020. (Docket No. 6). The First Amended Complaint alleges Breach of Contract (Count I), IIED (Count II), and unfair insurance claim settlement practices, in violation of M.G.L. c. 176D (Count III). Defendants removed the case from Worcester Superior Court to the U.S. District Court for the District of Massachusetts, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332.

## **Legal Standard**

In evaluating a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in the complaint as true and all draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000). To survive the motion, the complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

## Discussion

Defendants contend that Federal Rules of Civil Procedure 8 and 12(b)(6) compel dismissal because Plaintiff has failed to allege facts which would "entitle [her] to the relief sought" and that all three claims are time-barred.

### 1. Breach of Contact (Count I)

The parties agree that Shepardson obtained a valid cancer diagnosis and was eligible for the benefits contained in the Policy but disagree about whether the Policy benefits include insulin and Creon. Defendants also argue that Plaintiff's contract claim is time-barred by a separate Policy provision that limits bringing legal claims to three years after an insured's deadline to submit proof of loss. (Ex. A at 27, Docket No. 1-1) ("K. Legal Actions: No legal action may be brought to recover on this policy . . . after three years from the time written proof of loss is required to be furnished."). Plaintiff maintains that the three-year limitation period is unenforceable, or, if it is enforceable, that Aflac waived and/or tolled it.

The Cancer Policy's three-year limitation provision is dispositive of Plaintiff's breach of contract claim. The Policy requires that written proof of loss must be provided to Aflac within 60 days after the date of the loss. (Ex. A., Docket No. 1-1 at 27). Robert Shepardson's pancreas was removed in February 2011 and a September 18, 2014 doctor's letter confirmed his diabetes diagnosis. (Rosenbluth Ltr., Ex. A, Docket No. 4-2). Assuming that Mr. Shepardson was not diagnosed with diabetes until the date of the doctor's letter, the Policy required "written proof of loss" to be furnished by December 17, 2014. Therefore, any action would have had to be

brought by December 17, 2017. Plaintiff did not file suit until April 13, 2020, about two and a half years too late to preserve her breach of contract claim.

Plaintiff next argues that Aflac waived and/or tolled the Policy limitations period because its October 7, 2014 letter informed Robert Shepardson that he could appeal Aflac's denial of coverage to the Division of Insurance, and that administrative appeal is still pending. However, Aflac never represented that such an appeal would toll the Policy's limitation provision, and Plaintiff has not provided a single source of legal authority to support her argument that a state administrative inquiry can toll a contract between private parties without the parties' consent.

Plaintiff's claim that the Cancer Policy's contractual limitations provisions is unenforceable also lack merit. Breach of contract actions must be brought within six years under Massachusetts law, but parties can contract for a shorter limitations period, so long as the period is reasonable. Mass. Gen. Laws ch. 260, § 2; *see Krumholz v. AJA, LLC*, 691 F. Supp. 2d 252, 256 (D. Mass. 2010); *Chambers v. Tufts Associated Health Maint. Org., Inc.*, 2020 WL 2197932, at *3 (Mass. Super. Ct. Feb. 25, 2020). Moreover, in Massachusetts, the "general rule is that contracts of adhesion 'are enforceable unless they are unconscionable, offend public policy, or are shown to be unfair in the particular circumstances.'" *Oxford Global Resources, LLC v. Hernandez*, 480 Mass. 462, 466 (2018) (*quoting McInnes v. LPL Fin., LLC*, 466 Mass. 256, 266 (Mass. 2013)).

A determination of "[w]hat constitutes a reasonable period of time in which to require commencement of a legal action will vary according to the type of contract, the circumstances in which a given agreement is reached, and the particular provisions of that agreement." *Creative Playthings Franchising, Corp. v. Reiser*, 463 Mass. 758, 763 (Mass. 2012). The legislature

determines whether certain types of provisions are unreasonable or offend public policy; Massachusetts prohibits insurers from shortening limitations periods to less than two years. *See id.*; Mass. Gen. Laws ch. 175, § 22.

Because the Cancer Policy's three-year limitation provision was written in plain language, Shepardson entered into the contract voluntarily (or at least, there no allegations otherwise), three years is a reasonable amount of time for an insured to retain an attorney and prepare a lawsuit following an insurer's denial of coverage, and such a period exceeds the state's minimum threshold on limitation provisions in insurance contracts, the Policy's three-year contractual limitations period is not unconscionable or unfair. Therefore, it is enforceable.

Since the three-year limitation provision is enforceable, Aflac did not waive it, and Plaintiff failed to comply with it, Plaintiff's breach of contract claim must be dismissed.

2.  IIED

To establish a claim for IIED, a plaintiff must plead facts showing that (1) the "defendant intended, knew, or should have known that his conduct would cause emotional distress," (2) "that the conduct was extreme and outrageous," (3) "that the conduct caused emotional distress," and (4) "that the emotional distress was severe." *Galvin v. U.S. Bank, N.A.*, 852 F.3d 146, 161 (1st Cir. 2017).

Plaintiff's claim for intentional infliction of emotional distress is time-barred by Massachusetts' three-year statute of limitation for tort claims. M.G.L. c. 260, § 2A; *see Pagliuca v. City of Boston*, 626 N.E. 625, 628 (Mass. App. Ct. 1994). An IIED claim accrues "[w]hen an injury becomes manifest;" furthermore, "the statute of limitations does not stay in suspense until the full extent, gravity, or permanence of that same injury or consequential disease is known." (*Id*. at 625.). Here, Plaintiff alleges that Aflac's decision to deny coverage of Robert

Shepardson's diabetes medication was extreme and outrageous conduct that caused Robert Shepardson "pain, suffering, financial damage, and emotional distress for a prolonged period of time" and Margaret Shepardson "pain, suffering, financial damage, extreme emotional distress, and loss of consortium." (FAC ¶¶ 30-39, Docket No. 1-1). Therefore, Plaintiff's three-year clock to file this suit began ticking on October 7, 2014, when Aflac issued its first denial of coverage. Plaintiff's nearly six-year delay to bring this action is fatal.

Even if Plaintiff's IIED claim were not time-barred, it would fail because she has not alleged facts showing that Aflac's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Young v. Wells Fargo Bank, N.A.*, 717 F.2d 224, 240 (1st Cir. 2013). Without more, an insurer's decision to deny a claim for benefits is not extreme and outrageous where it provides a reasonable justification of its decision under the terms of the underlying insurance policy. Otherwise, any insurer's decision to deny benefits to a seriously ill policyholder would give rise to an IIED claim, and the insurance industry would collapse.

Aflac's motion to dismiss Count II is granted.

### 3.  *Chapter 176D*

Plaintiff alleges that Aflac engaged in thirteen unfair insurance claim settlement practices, each of which are prohibited by Chapter 176D and constitute violations of Chapter 93A. (FAC at ¶¶ 40-57, Docket No. 1-1). Instead of providing facts to show how Aflac violated each prohibited practice, the FAC contains "a formulaic recitation of the elements of [the] cause of action…" *Twombly*, 550 U.S. at 555*)*; *compare* FAC at ¶¶ 41-54 *with* M.G.L. ch. 176D, § 3(9)(a)-(n).

Only three paragraphs in the 176D section of the FAC contain information other than a regurgitation of the names of the thirteen prohibited practices. (FAC ¶ 55-57). Those meager three paragraphs do not provide sufficient support to show entitlement to relief under 176D. In short, they speculate that Aflac's denial of coverage was unreasonable and motivated by a desire to avoid its obligation to pay for Robert Shepardson's medications, and that Aflac's decision to terminate the parties' Tolling Agreement on April 10, 2020, a date that "coincided with the courts' systematic shutdown protocols then in place due to the novel coronavirus/COVID-19," was unfair. (*Id.* at ¶ 23). However, none of the facts in the FAC show that Aflac's denial was unreasonable, or that its settlement actions during which it maintained its lack of liability violated 176D. Furthermore, Robert and Margaret Shepardson set and agreed to the terms of the Tolling Agreement, which provided both parties with the unilateral power to terminate once settlement negotiations reached an impasse. (Ex. D, Docket No. 1-1 at 46-47). Plaintiff was able to file this suit three days after the Tolling Agreement terminated, so she has not shown that any harm to her legal claim against Aflac arose from Aflac's decision to terminate the Tolling Agreement after the courts' COVID-19 emergency protocols took effect.

Additionally, Plaintiff's 93A and 176D claims are time-barred by a four-year statute of limitations.[4] Mass. Gen. Laws ch. 260, § 5A. Accrual for a 93A claim begins "when the plaintiff knew or should have known of appreciable harm resulting from the defendant's [actions]…" *Schwartz v. Travelers Indem. Co.*, 50 Mass. App. Ct. 672, 678 (2001). In actions related to insurance claims, this occurs upon notice of the insurer's denial of the claim, at the latest. *See id.* Aflac's October 7, 2014 letter contained an unequivocal denial of coverage that

---

[4] Plaintiff is correct that the Cancer Policy's three-year limitations provision does not apply to her consumer protection claims under Massachusetts law. *See Schwartz v. Travelers Indem. Co*, 50 Mass. App. Ct. 672, 673 (2001).

put Robert Shepardson on notice that Aflac would not reimburse him for the cost of his diabetes medications under the terms of the Cancer Policy. (Ex. B, Docket No. 1-1 at 41). The statute of limitations lapsed four years later, in October 2018. Plaintiff did not bring suit until April 13, 2020, five and a half years too late to preserve her 176D claim.

Plaintiff makes a frivolous argument that the statute of limitations never began to run on her 176D claim because she appealed Aflac's denial to the Massachusetts Division of Insurance, whose "investigation remains open, ongoing, and unresolved." (Docket No. 11 at 13). Even if this were a valid legal theory, Plaintiff has provided no evidence on the record that such an appeal exists, its nature, or its current status, and her counsel could not do so at oral argument. More importantly, it is a matter of black letter law that 176D claims accrue upon notice of the insurer's denial of the claim.

The Court thus **_grants_** the motion to dismiss Plaintiff's claim for violations of Chapters 93A and 176D, with prejudice.

## Conclusion

For the reasons stated above, Defendants' Motion to Dismiss is **_granted_**. (Docket No. 4).

**SO ORDERED.**

**_/s/ Timothy S. Hillman_**
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**
